IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KLARA COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARRIOTT HOTEL SERVICES, INC., | ) | |
| et al., | ) | No. 20-cv-04769 |
| | ) | |
| Defendants/Third-Party | ) | Judge Andrea R. Wood |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CINTAS CORPORATION, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Klara Collins was visiting Chicago's Marriott Marquis Hotel ("Hotel") from California in February 2018. While exiting the Hotel, Collins tripped and fell on a mat in the lobby. She subsequently sued Defendants Marriott Hotel Services, Inc. and Marriott International, Inc. (together, "Marriott") in the Circuit Court of Cook County, alleging negligence. Marriott removed the case to federal court and filed a third-party complaint against Cintas Corporation ("Cintas") for implied indemnification and contribution. Now before the Court are Marriott's motion for summary judgment on Collins's negligence claim (Dkt. No. 59), and Cintas's motion for summary judgment on the third-party complaint (Dkt. No. 56). For the reasons stated below, Marriott's motion is granted and Cintas's motion is denied as moot.

**BACKGROUND**

I.     **Scope of Summary Judgment Record**

The Court first addresses the scope of the evidence properly before it. In Collins's statement of additional material facts ("CSAF") submitted pursuant to Local Rule 56.1, she relies on the expert report of Mark J. Burns ("Burns Declaration"), which was disclosed for the first time after the close of all discovery in connection with Collins's response to Marriott's summary judgment motion. (CSAF, Ex. 4, Burns Decl., Dkt. No. 69-4.) Marriott moved to strike the Burns Declaration, arguing that Collins had failed to timely disclose Burns's expert testimony and that his opinions could not withstand scrutiny under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Dkt. No. 71.) The Court orally granted Marriott's motion to strike. (Dkt. No. 85.) At the same time, the Court offered Collins the opportunity to supplement her response to Marriott's summary judgment motion to account for the fact that she would not be permitted to rely on Burns's testimony. Collins declined to do so. Accordingly, the Court will not consider paragraphs 13 through 26 of Collins's statement of additional facts, each of which relies solely on the Burns Declaration or his expert disclosure. Likewise, the Court will not consider argument based on the Burns Declaration.

Marriott also contends that Collins's response to its statement of facts should be stricken in its entirety because the response does not comply with Local Rule 56.1. "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, [the Seventh Circuit] ha[s] consistently upheld the district court's discretion to require strict compliance . . . ." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (internal quotation marks omitted). Here, Collins's submission contains only her responses to Marriott's statements of fact without also setting forth the substance of the facts to which she is

responding. *See* L.R. 56.1(e)(1) ("Each paragraph shall set forth the text of the asserted fact (including its citations to the supporting evidentiary material), and then shall set forth the response."). But because Collins properly numbered her responses, the Court has no difficulty discerning which facts from Marriott's submission correspond to Collins's responses. As the Court has not been hindered in its review of the record, it declines to strike Collins's entire response.

## II. Summary of Material Facts

Subject to the discussion above, the Court sets forth the following summary of material facts drawn from the parties' submissions pursuant to Local Rule 56.1. Except where noted, the facts are undisputed. In addition, for purposes of Marriott's summary judgment motion, all facts are viewed in the light most favorable to Collins as the non-movant. *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021).

Collins visited the Hotel, located in Chicago at 2121 South Prairie Avenue, for business meetings in February 2018. (Collins Resp. to Marriott's Statement of Facts ("CRMSF") ¶¶ 1–2, Dkt. No. 68.) The Hotel's lobby had a large rug but, because it was winter, Marriott also contracted with Cintas to have floor mats installed to address ice and snow tracked into the Hotel. (*Id.* ¶¶ 13–14.) The mats were placed on top of the lobby's large rug. (Marriott Resp. to CSAF ("MRCSAF") ¶ 4, Dkt. No. 87.) Cintas recommended and installed the floor mats six days before Collins's fall. (CRMSF ¶ 17; Cintas Resp. to Marriott SAF ("Cintas RMSAF") ¶¶ 4, 8, Dkt. No. 81.) Hotel staff would vacuum the area—including the floor mats—but they did not move the floor mats. (CRMSF ¶¶ 19–20.)[1] The particular mat in question was placed on top of

---

[1] Collins disputes paragraph 20, which states that Hotel employees "would vacuum over [the mats] but would not move them" after Cintas initially placed them. (Marriott Statement of Facts ("MSF") ¶ 20, Dkt. No. 61.) But Collins cites no evidence to controvert Marriott's asserted fact. Instead, as support for her denial, Collins simply cites the same deposition testimony that Marriott cites. And that excerpt establishes

the larger rug at a slight angle to the door—that is, the mat was not exactly squared up to the door. (MRCSAF ¶ 4.) A still image of the mat, seen on the left-hand side of the Hotel lobby, is depicted below:



(CSAF, Ex. 6, Dkt. No. 69-6.)[2]

---

that once the mats were placed by Cintas, Marriott employees would vacuum over the mats but not move them. "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). Because Collins fails to cite specific evidentiary material controverting Marriott's asserted fact, the Court deems paragraph 20 admitted. *Cracco*, 559 F.3d at 629. This is not an isolated incident. Collins also denies Marriott's asserted facts in paragraphs 9, 11, 12, and 22 without citing her own evidentiary material and without stating her basis for claiming that Marriott's asserted facts failed to represent Collins's full testimony accurately. Accordingly, the Court deems admitted paragraphs 9, 11, 12, and 22.

[2] This still image was included as an exhibit to the Burns Declaration, which the Court has stricken. However, the still image was taken from the Surveillance Video, which is elsewhere in the record.

Marriott preserved 23 minutes and 53 seconds of surveillance video ("Surveillance Video") of the lobby from the time around the incident, capturing 13 minutes and 47 seconds of activity before Collins's fall. (CRMSF ¶¶ 25, 28; Marriott SF, Ex. 3, Surveillance Video, Dkt. No. 61-3.) Marriott does not possess the remaining video. (MRCSAF ¶ 12.)[3] As captured by the Surveillance Video, at no point prior to or after her fall was the mat curled, bent, or buckled. (CRMSF ¶¶ 37–38.) During her deposition testimony, Collins acknowledged that at the 13:46 mark in the Surveillance Video—one or two seconds before her fall—she did not see anything about the rug or the mat that she considered unsafe. (*Id.* ¶ 9.) Indeed, the mat is successfully crossed by various persons at least 42 times during the Surveillance Video, which also captures Collins walking across the mat on two occasions prior to her fall. (*Id.* ¶ 29.) After exiting and re-entering the door of the Hotel, Collins walked towards the door once more to exit again. (*Id.* ¶¶ 5–7.) She initially walked backwards while moving towards the exit facing away from the door, putting on a coat as she walked. (*Id.* ¶¶ 7, 33.) She turned to face the door just prior to her fall. (*Id.* ¶¶ 7–8.) Marriott contends that Collins turned her head to face the door one second before she fell; Collins disputes this, stating that she turned her head two seconds before. (*Id.* ¶ 36.) When she fell, she was still putting on her coat. (*Id.* ¶ 34.)

Two Marriott loss prevention officers were in the lobby when Collins fell. (*Id.* ¶ 21.) Their responsibilities as loss prevention officers included walking through and patrolling the lobby. (*Id.* ¶ 21.) As Marriott's representative testified, loss prevention officers would address hazardous or defective conditions; for example, if a mat was curled up, they would return it to its

---

[3] Collins asserts that Marriott "destroyed" the video. However, the evidence she cites does not support that contention. Rather, the request for production to which she cites states that, "[a]fter reasonable and diligent inquiry, Marriott does not possess video of the area [of Collins's fall] for February 14, 2018, beyond that which was already produced." (CSAF, Ex. 2, Marriott Req. for Produc. at 1, Dkt. No. 69-2.)

5

intended state. (CRMSF ¶ 22; Marriott SF, Ex. 2, Mrowiec Dep. at 68:22–69:9, Dkt. No. 61-2.) Collins disputes that the loss prevention officers actually carried out those duties, however, claiming that after she fell, one of the loss prevention officers looked at the mat and made no adjustments to it. (CRMSF ¶¶ 22, 39.) But Collins admits that after her fall, and roughly thirty seconds before the loss prevention officer looked at the mat and made no adjustments, "the mat is shown [on the Surveillance Video] as flat with no curls, bends, or buckles apparent on the video." (*Id.* ¶¶ 38–39.)

Collins suffered a concussion and fractured thumb as a result of the fall. (MRCSAF ¶¶ 7–8.) She contends that as a result of her injury, her work performance declined and she was fired; Marriott, however, points out that she testified that she was part of a company-wide 400-employee layoff. (*Id.* ¶ 10.) Collins also underwent physical therapy for roughly six months but cannot recall precisely how long. (*Id.* ¶ 9.)

### III. Procedural History

Collins initially sued Marriott in the Circuit Court of Cook County, and Marriott subsequently removed the case to this Court based on diversity of citizenship. Marriott then filed a third-party complaint against Cintas, denying its own liability but arguing that, if it is found liable, then it is entitled to contribution under the Illinois Contribution Among Joint Tortfeasors Act ("Contribution Act"), 740 ILCS 100/1 *et seq.*, and implied indemnification. After discovery, Marriott and Cintas filed the instant motions for summary judgment. Marriott directs its motion at Collins, arguing that she has failed to adduce evidence from which a reasonable jury could find Marriott negligent. Cintas's motion adopts Marriott's arguments as to Collins and further argues that, if Marriott is not liable to Collins, then Cintas cannot be liable to Marriott. In the alternative, Cintas argues that even if Marriott's motion is denied, the Court should still grant

summary judgment in its favor on Marriott's third-party claims for contribution and implied indemnification.

## DISCUSSION

At the summary judgment stage, the Court must determine if a genuine dispute of material fact exists such that a reasonable jury could return a verdict for the nonmoving party. *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010). The Court's function is to "determine whether there is a genuine issue for trial," not to make determinations of truth or weigh evidence. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018). Courts must avoid "the siren song that tempts [them] into making factual determinations at the summary judgment stage." *Gupta*, 19 F.4th at 996. Once a properly supported motion for summary judgment is made, the opposing party must respond by setting forth specific facts showing that there is a genuine factual issue for trial. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). In deciding whether there is a genuine issue, the Court must "construe all facts and reasonable inferences" in the light most favorable to the nonmovant. *Nischen v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017).

### I. Marriott's Motion for Summary Judgment

Marriott seeks summary judgment in its favor, arguing that Collins has failed to point to any evidence establishing its negligence in relation to her fall.

#### A. Adverse Inference

Before reaching the merits of the negligence claim, the Court first addresses Collins's contention that because Marriott only retained video of the lobby for roughly 24 minutes around the time of Collins's fall (rather than the entire day), the Court should draw an adverse inference against Marriott.

7

Near the end of fact discovery, Collins requested video for the full day. (Mot. to Extend Disc. ¶ 15, Dkt. No. 53.) Collins explained the eleventh-hour nature of its request by claiming that the importance of the full video—*i.e.*, that it would show what actions Marriott's employees took to put the mat in a "proper" position and how long the mat was not exactly parallel with the door—did not become clear until after Marriott's deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). (*Id.* ¶¶ 13–15.) Marriott initially objected to production of the full day's worth of video. (*Id.* ¶ 18.) At a subsequent hearing, the Court ordered Marriott "to look for and, if located, produce the video footage from 9:00 am until the time of the incident." (5/30/2022 Hr'g Tr. at 15:17–19, Dkt. No. 70.) If Marriott determined that video for that entire time period had not been retained "because [it] didn't believe it was relevant to this litigation," the Court directed Marriott to inform Collins's counsel in writing. (*Id.* at 16:9–13.) Just over two weeks later, Marriott responded in writing to Collins's request for production of the full video, stating that, "After reasonable and diligent inquiry, Marriott does not possess video of the area for February 14, 2018, beyond that which was already produced." (CSAF, Ex. 2 ¶ 1, Dkt. No. 69-2.)

Collins now asks the Court to find that Marriott intentionally destroyed the video evidence and draw an adverse inference against it. She contends that Marriott had a duty to preserve the video evidence for a longer period of time, that it failed to do so, and that, as a result, the Court should draw adverse inferences that would defeat its motion for summary judgment.

Collins bases her argument on a duty that she claims Marriott had under Illinois law to preserve the additional video footage. But whether Marriott had such a duty is not directly relevant, because "[s]imply establishing a duty to preserve evidence or even the negligent destruction of evidence does not automatically entitle a litigant to an adverse inference." *Bracey*

8

*v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013). Rather, to be entitled to an adverse inference based on destruction of evidence, Collins "must . . . show destruction in bad faith." *Id.* at 1019. "[B]ad faith requires destruction for the purpose of hiding adverse information." *Id.* (internal quotation marks omitted). "[T]he crucial element is not that evidence was destroyed but rather the reason for the destruction." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008). While Collins is the non-movant for summary judgment purposes, it is nonetheless her burden to adduce evidence that Marriott "destroyed the [evidence] in order to hide adverse information" in order to obtain an adverse inference. *Id.*

Yet Collins offers no evidence that Marriott acted in bad faith and relies entirely on speculation. Such mere speculation, without more, cannot support an adverse inference. *See Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) ("[Plaintiff] has offered no evidence, other than his own speculation, that [evidence was] destroyed to hide discriminatory information."). Notably, Collins herself indicated that the significance of video footage from earlier in the day was not apparent until late in the discovery period in explaining why she waited so late to ask for the evidence. And now, instead of offering evidence of Marriott's bad intent, Collins posits:

> Where is the remainder of the video? Why do we not see when the floor mat changed position? Why do we not see how long the floor mat was in an unsafe condition? Why do we not see how the floor mat changed position? The reason is clear. Because that would show how easily the floor mat shifted/moved and how long the floor mat was in that position.

(Collins Opp. to Summ. J. at 8–9, Dkt. No. 67.) The reason is not so clear, however. The Court does not find it unreasonable that Marriott would not have preserved hours of video for four years. And Collins does not appear to have sought any discovery from Marriot about its retention practices relevant to the Surveillance Video that might support a claim that Marriott deviated

9

from its normal practices. Nor is there any evidence whatsoever that the mat was *ever* in a different position than shown on the video footage that is part of the record.

In short, there is no evidence that Marriott acted in bad faith in failing to retain the video footage from the lobby for the entire day. Accordingly, the Court finds that Collins is not entitled to an adverse inference.

### B. Merits of Negligence Claim

To prevail on a negligence claim under Illinois law, a plaintiff must prove "that the defendant owed a duty to the plaintiff, that [the] defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012) (quoting *First Springfield Bank & Tr. v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999)). For purposes of its summary judgment motion, Marriott focuses on the second and third elements, arguing that Collins has failed to adduce any evidence that Marriott breached any duty owed to Collins or that any such breach caused her injuries.

"[T]he use of ordinary floor mats to assist pedestrians is perfectly reasonable, and the fact that a person trips on one of them is no evidence of negligence." *Robinson v. Sw. Bell Tel. Co.*, 167 N.E.2d 793, 796 (Ill. App. Ct. 1960). Nonetheless, "[w]hen the use of mats is not reasonable, a store may be held liable for negligent acts and omissions relating to installing and maintaining floor mats." *Porges v. Wal-Mart Stores, Inc.*, No. 09 C 3705, 2011 WL 939922, at *8 (N.D. Ill. Mar. 15, 2011). To prevail on a negligent placement theory, it is not enough to show that "this type of floor mat becomes rumpled after customers walk on it;" rather, "[t]o demonstrate negligent placement of the mats, [the] [p]laintiff must show that the [d]efendant placed the mats on the floor in a rumpled manner or put defective mats on the floor." *Id.* (internal quotation marks omitted). A plaintiff may also prevail "if [she] can show that those mats are defective . . . ." *Caburnay v. Norwegian Am. Hosp.*, 963 N.E.2d 1021, 1032 (Ill. App. Ct. 2011).

Collins, however, points to no evidence from which a reasonable juror could conclude that the mats were defective or negligently installed. Throughout the Surveillance Video, the mat appears flat on the ground and does not appear "worn, poorly maintained, or otherwise defective." *Durling v. Menard, Inc.*, No. 18 C 4052, 2020 WL 996520, at *4 (N.D. Ill. Mar. 2, 2020). Collins herself admits that "at no point in time between 0:00 and 13:47 of the video is the mat curled, bent, or buckled in a manner apparent on the video," and further that "after [she] fell and exited the hotel, the mat is shown again as flat with no curls, bends, or buckles apparent on the video." (CRMSF ¶¶ 37–38.) In reviewing the Surveillance Video, Collins confirmed that at the time she fell, she did not consider anything about the rug or the mat to be unsafe. (*Id.* ¶ 9.) In short, there is no evidence that the mat was worn out, in poor condition, or had any of its corners flipped up, or that any customers had complained about the mat. *See Porges*, 2011 WL 939922, at *9 (evaluating these conditions in granting summary judgment in defendant's favor). And even if the mat was in poor condition, Collins points to no evidence that any Hotel staff were aware of that condition.

Collins also argues that Marriott was negligent in failing to adhere the mat to the floor, such as by using tape or some other type of anchoring or adhesive. In support of this argument, Collins cites *Wind v. Hy-Vee Food Stores, Inc.*, 650 N.E.2d 258 (Ill. App. Ct. 1995), where the Illinois Appellate Court reversed a jury verdict and remanded the case for a new trial after finding that "a significant amount of testimony . . . indicates that the mats were **not** fastened to the floor on the day of the accident." *Id.* at 263. But Collins ignores that the *Wind* court noted the lack of fastening in light of the fact that "[t]estimony in the record indicate[d] that the mats were usually taped to the floor." *Id.* In other words, there was evidence of a departure from normal practice. *See Porges*, 2011 WL 939922, at *9 ("Unlike *Wind*, where defendants failed to follow

11

their traditional installation process of the floor mats on the day the plaintiff was injured, [the defendant] maintained the same installation process each day and there is no evidence that it diverged from this practice on the day that Porges tripped."). In contrast, here, there is no evidence that Marriott deviated from its typical practice.

Collins also relies on *Caburnay v. Norwegian American Hospital*, in which the Illinois Appellate Court reversed the trial court's decision granting summary judgment in the defendant's favor in part because "the mat in question had repeatedly buckled because it was not secured to the floor with tape." 963 N.E.2d at 1032. But in this case, there is no evidence that the mat had ever moved, let alone buckled. Indeed, the Surveillance Video shows dozens of people walking across the mat without any slipping, buckling, or other movement. True, Collins did testify that she recalls feeling "[her] right front boot get caught" on the mat (MRCSAF ¶ 6), and the Surveillance Video arguably shows her left boot under the mat just before her fall (Surveillance Video at 13:47–13:48). But without any evidence that Marriott was obligated to adhere the mat to the floor,[4] or that Marriott caused the mat to be slippery or buckle, or that the mat was otherwise defective, no reasonable jury could find that Marriott was negligent.

For these reasons, Marriott's motion for summary judgment is granted.

## II. Cintas's Motion for Summary Judgment

In addition, Cintas has filed a motion for summary judgment on Marriott's third-party complaint for contribution and implied indemnification. In support of its motion, Cintas expressly adopts and incorporates Marriott's arguments for why Collins cannot prevail on her negligence claim against Marriott, and then points out that "if [Collins] is unable to prove her

---

[4] To the extent Collins might have relied on the Burns Declaration to establish Marriott's obligation to adhere the mat to the floor better, for reasons noted above, that evidence is not properly before the Court.

causes of action against Marriott, there is no basis for Cintas to be held liable to Marriott." (Cintas Mem. at 2, Dkt. No. 58.) Indeed, under Illinois law, "[a]ctions for indemnity and contribution are, by their very nature, contingent claims; each is contingent on the party seeking the relief first having been found liable in tort to the plaintiff in the underlying action. *Patch v. Glover*, 618 N.E.2d 583, 588 (Ill. App. Ct. 1993). And here, since Marriott is not liable to Collins as a matter of law, there is no basis for Marriott to seek contribution or indemnification from Cintas. Accordingly, Marriott's third-party claims against Cintas are moot.

## CONCLUSION

For the reasons stated above, Marriott's motion for summary judgment (Dkt. No. 59) is granted. Because Marriott is not liable to Collins as a matter of law, Cintas's motion for summary judgment on Marriott's third-party complaint for contribution and indemnification (Dkt. No. 56) is denied as moot. Moreover, the third-party complaint is dismissed without prejudice as moot.

ENTERED:

Dated: October 8, 2024

_____
Andrea R. Wood
United States District Judge

13